425 So.2d 636 (1983)
Irving LITTMAN, Individually, and Park Lane Enterprises, Inc., a Corporation, Appellants,
v.
COMMERCIAL BANK & TRUST COMPANY, a Florida Banking Corporation, Appellee.
Nos. 81-847, 81-1690.
District Court of Appeal of Florida, Third District.
January 25, 1983.
*637 George & McQuade and Walter F. McQuade, North Miami, for appellants.
Schultz & Hollander and Steven A. Schultz, Miami, for appellee.
Before HENDRY, NESBITT and DANIEL S. PEARSON, JJ.
HENDRY, Judge.
Appellants Irving Littman and Park Lane Enterprises, Incorporated, defendants below, appeal from an adverse final summary judgment in Commercial Bank & Trust Company's action for damages resulting from appellants' transfer of a fork lift which was subject to a security lien in favor of the bank.
Commercial Bank held a security interest on the fork lift under the Uniform Commercial Code (UCC) pursuant to an agreement with the debtor. When the debtor was adjudicated bankrupt, the fork lift was sold at public auction to Park Lane for $110, subject to the bank's lien of $12,057.31. One month later, having received no payments under the security agreement, the bank demanded that the appellants produce the fork lift. Littman, an officer of Park Lane, advised the bank that it had been resold for $850, subject to the bank's lien. The bank was unable to locate either the alleged purchaser or the fork lift.
The bank then filed suit seeking damages for violation of sections 818.01 and 818.03, Florida Statutes (1979). Appellants entered a general denial to the bank's complaint. After entry of partial summary judgment for the bank, the appellants sought rehearing and filed affidavits. The motion for rehearing was denied and on May 14, 1981, the court entered a final summary judgment for the bank awarding damages in the amount of $12,057.31, plus interest and costs against the appellants jointly and severally, and denying the bank's claim for attorney's fees. Judgment was also entered for the bank on Littman's counterclaim. Rehearing was denied and the appellants filed this appeal. The bank filed a cross-appeal which was abandoned, and a motion to dismiss appeal No. 81-847 as having been taken from a non-final order. The appeals were consolidated and the motion to dismiss was granted, but the order of dismissal was vacated upon motion for rehearing and the appeals reinstated. Three main issues are raised by this appeal.

I
The first issue appellants raise is that the court below erred in entering summary judgment predicated on alleged violations of Chapter 818, Florida Statutes (1979), as section 818.01, which declares it a misdemeanor to dispose of property subject to a lien without consent of the vendor, directly conflicts with and has been impliedly repealed by section 679.311, Florida Statutes (1979)[1] of the Uniform Commercial Code, *638 which allows for transfer of a debtor's rights in collateral notwithstanding a prohibition in the security agreement. Appellants further allege that neither section 818.01[2] nor 818.03[3], on which this action is founded, apply to a successor in interest to the original debtor; that there was no evidence in the instant case establishing the necessary elements set forth in the statutes; and that genuine issues of material fact exist precluding summary judgment. Appellants' contention that section 818.01 is inconsistent with and was therefore repealed by enactment of section 679.311 of the UCC is based on a comment in Florida Statutes Annotated and an unpublished Florida Attorney General Opinion, No. 071-6, suggesting that such a conflict may exist.
At the outset we observe that this court has previously held that a violation of penal statutes 818.01 and 818.03, Florida Statutes, may give rise to a civil cause of action for compensatory and punitive damages as well as criminal penalties. Rosenberg v. Ryder Leasing, Inc., 168 So.2d 678 (Fla.3d DCA 1964). Turning then, to the issues raised, we find that a resolution of appellants' first contention involves construction and application of provisions of the UCC and other Florida Statutes.
In the absence of a showing to the contrary, it is presumed that all laws are consistent with each other and that the legislature would not effect a repeal of a statute without expressing an intention to do so. Woodgate Development Corp. v. Hamilton Investment Trust, 351 So.2d 14 (Fla. 1977); State ex rel. School Board of Martin County v. Department of Education, 317 So.2d 68 (Fla. 1975); Mann v. Goodyear Tire and Rubber Co., 300 So.2d 666 (Fla. 1974). Courts must assume that later statutes were passed with knowledge of prior existing laws, and will favor a construction that gives a field of operation to both rather than construe one statute as being meaningless or repealed by implication unless such a result is inevitable. Villery v. Florida Parole & Probation Commission, 396 So.2d 1107 (Fla. 1980); State v. Zimmerman, 370 So.2d 1179 (Fla. 4th DCA 1979); State Department of Public Welfare v. Galilean Children's Home, 102 So.2d 388 (Fla.2d *639 DCA 1958). Where statutory provisions are irreconcilable, however, the general rule is that specific statutes on a subject take precedence over another statute covering the same subject in general terms. Bryan v. Landis, 106 Fla. 19, 142 So. 650 (1932); State v. Young, 357 So.2d 416 (Fla.2d DCA 1978), rev'd on other grounds, 371 So.2d 1029 (Fla. 1979).
Applying these principles to the instant case, we initially observe that many of the provisions of the UCC interact, and although section 679.311 states that a "debtor's rights in collateral may be voluntarily or involuntarily transferred," this provision must be read together with section 679.306(2) which states that:
Except where this chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.
Thus, section 679.311, while providing that the debtor has an interest which he can dispose of and which his creditors can reach, was also intended to protect the secured creditor's interest by insuring that any transfer of the collateral does not destroy or affect a prior perfected security interest. Earthmovers, Inc. v. Clarence L. Boyd Co., Inc., 554 P.2d 877 (Okl.Ct.App. 1976); see First National Commerce and Finance Co. v. Indiana National Bank, 360 So.2d 791 (Fla.3d DCA 1978); Altec Lansing v. Friedman Sound, Inc., 204 So.2d 740 (Fla.3d DCA 1967); accord American Heritage Bank & Trust Co. v. O. & E., Inc., 40 Colo. App. 306, 576 P.2d 566 (Colo.Ct.App. 1978); Filker v. Honda Motor Co., Ltd., 87 Ill. App.3d 865, 42 Ill.Dec. 880, 409 N.E.2d 495 (Ill. App.Ct. 1980); Memphis Bank & Trust Co. v. Pate, 362 So.2d 1245 (Miss. 1978); Fliegel v. Associates Capital Co. of Delaware, Inc., 272 Or. 434, 537 P.2d 1144 (Or. 1975). This is so even in cases where the secured creditor has consented to the transfer. See, e.g., R.I.D.C. Industrial Development Fund v. Snyder, 387 F. Supp. 466 (M.D.Fla. 1975), rev'd on other grounds, 539 F.2d 487 (5th Cir.1976), cert. denied, 429 U.S. 1095, 97 S.Ct. 1112, 51 L.Ed.2d 542 (1977). Furthermore, other jurisdictions have found section 9.311 of the UCC no bar to enforcement of actions similar to the one in this case. See, e.g., Liberty Truck Sales, Inc. v. Fountain, 381 So.2d 646 (Ala. Civ. App. 1980) (sale of collateral with the intent to defraud the holder of a security interest therein is a crime); Oxford Production Credit Association v. Dye, 368 So.2d 241 (Miss. 1979) (secured creditor may recover damages from the debtor and the debtor's purchaser where collateral is sold); Trans-Nebraska Corp. v. Cummings, Inc., 595 S.W.2d 922 (Tex.Civ.App. 1980) (secured creditor may sue the debtor's buyer for conversion of the collateral).
We think it clear that to the extent of any conflict, the specific statutory provisions of sections 818.01 and 818.03 must prevail over the general terms of section 679.311. Additionally, both section 818.01 and 818.03 were amended following adoption of the UCC and after the unpublished Attorney General Opinion upon which appellants rely, demonstrating that the legislature found no conflict between the provisions.[4] Accordingly, we find no genuine conflict exists between UCC provision 679.311 and sections 818.01 and 818.03 so as to preclude application of the latter in the instant case.
Appellants' contention that neither section 818.01 nor 818.03 apply to a successor in interest to the original debtor is likewise without merit. Both sections specifically refer to "whoever" throughout, clearly not limiting their application to an original debtor under a security agreement. Compare sections 818.01 and 818.03 with section 817.562 which makes it actionable fraud to sell or otherwise dispose of secured property, but limits the scope thereof to those persons "having executed a security *640 agreement creating a security interest in personal property." Section 817.562(2), Florida Statutes (1981). Appellants would have us distinguish Rosenberg v. Ryder Leasing, Inc., supra, where the defendant removed from the county and disposed of a power brake on which the plaintiff held a first mortgage, from the case sub judice on the basis that the defendant in Rosenberg was the original debtor. Contrary to appellants' assertion, there is no indication in Rosenberg that the defendant was the original debtor, nor that the decision is so limited. Therefore, its holding that a violation of sections 818.01 and 818.03 is a tort for which compensatory and punitive damages may be awarded applies to the instant case. Although Rosenberg predates the adoption of the UCC in Florida, as stated above, we find no conflict between section 679.311 and sections 818.01 and 818.03 precluding maintenance of the present action.
Appellants further contend that even if sections 818.01 and 818.03 have not been repealed and do apply to third party purchasers, the evidence below simply does not support their application in the present case, and in any event, genuine issues of material fact remain for resolution.
We agree with appellants' contention that the record fails to support application of section 818.03 in this case. There is no evidence that the fork lift was at any time removed beyond the county limits  a necessary prerequisite to a violation of that section. However, the elements necessary to support a violation under section 818.01 were proven by the pleadings, affidavits, admissions, and answers to interrogatories below. It is undisputed that the subject fork lift was sold by Park Lane through its duly authorized officer, Irving Littman, without the knowledge or written consent of the bank. Appellants affirmatively answered interrogatories establishing that Irving Littman handled the sale of the fork lift for Park Lane, and that the sale took place on or about December 18, 1979, at a price of $850 above the bank's lien of $12,057.31. Moreover, the statute itself provides that failure of the purchaser of secured property to produce or deliver said property upon demand of the secured creditor after the debt has become enforceable or the vendee has substantially defaulted shall be prima facie evidence of "concealing, selling or disposing," of such property. § 818.01(2), Fla. Stat. As appellants sold the fork lift without the written consent of the bank, failed to produce it in response to the bank's demand, and raised no genuine issues of material fact in their affidavits opposing the summary judgment, the necessary elements of section 818.01 were established and judgment was properly entered for the bank as a matter of law.

II
Appellants' second contention is that the trial court erred in entering judgment against Irving Littman individually. We disagree. Individual officers and agents of a corporation are personally liable where they have committed a tort even if such acts are performed within the scope of their employment or as corporate officers or agents. Adams v. Brickell Townhouse, Inc., 388 So.2d 1279 (Fla.3d DCA 1980); Bush v. Belenke, 381 So.2d 315, 316 (Fla.3d DCA 1980); CIC Leasing Corp. v. Dade Linen and Furniture Co., 279 So.2d 73 (Fla.3d DCA 1973) and cases cited; see Dade Roofing and Insulation Corp. v. Torres, 369 So.2d 98 (Fla.3d DCA 1979). Since Irving Littman personally handled the purchase and resale of the fork lift, he is individually liable for the tort alleged herein and the trial court properly denied his motion to dismiss. Orlovsky v. Solid Surf, Inc., 405 So.2d 1363 (Fla.4th DCA 1981).

III
The third and final contention raised alleges that the trial court erred in using the unpaid balance under the security agreement as the measure of damages. As appellants have cited no authority for their assertion that fair market value is the appropriate measure of damages, and this is a *641 case of first impression,[5] we turn to other statutory provisions for guidance.
Section 78.19, Florida Statutes (1981), which deals with replevin of personal property, for example, provides that where the goods are redelivered to the defendant, the plaintiff prevails, and the plaintiff's interest in the property is based on a lien or some special interest, the judgment is limited to the amount of the lien or the value of the special interest.
Similarly, section 679.504 of the UCC provides that upon default, the proceeds from sale or other disposition of collateral by the secured party shall be applied in the following manner: (1) expenses incurred in disposition of the property; (2) the satisfaction of indebtedness secured by the security interest; and (3) the satisfaction of indebtedness secured by any subordinate security interest.
Consequently, we think the proper course in the present case is to require appellants to pay the remaining balance under the security agreement as damages, particularly in light of the fact that they both purchased and resold the fork lift subject to the bank's lien, indicating at least some knowledge and acceptance of the lien as the property's true value. Accordingly, the trial court's assessment of damages, which has not been shown to be clearly erroneous under the facts and circumstances of this case,[6] is affirmed.
Affirmed.
NOTES
[1] Alienability of debtor's rights; judicial process.  The debtor's rights in collateral may be voluntarily or involuntarily transferred (by way of sale, creation of a security interest, attachment, levy, garnishment or other judicial process) notwithstanding a provision in the security agreement prohibiting any transfer or making the transfer constitute a default.
[2] Disposing of personal property under lien, etc. 
(1) Whoever shall pledge, mortgage, sell, or otherwise dispose of any personal property to him belonging, or which shall be in his possession, and which shall be subject to any written lien, or which shall be subject to any statutory lien, whether written or not, or which shall be the subject of any written conditional sale contract under which the title is retained by the vendor, without the written consent of the person holding such lien, or retaining such title; and whoever shall remove or cause to be removed beyond the limits of the county where such lien was created or such conditional sale contract was entered into, any such property, without the consent aforesaid, or shall hide, conceal or transfer, such property with intent to defeat, hinder or delay the enforcement of such lien, or the recovery of such property by the vendor, shall be guilty or a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
(2) It shall be prima facie evidence of concealing, selling, or disposing of such personal property whenever the person owning the property at the time the lien was created, or who bought the same under such retained title contract, fails or refuses to produce such property for inspection within the county where the lien was created, or the property delivered, upon demand of the person having such lien, or retaining such title, after the debt secured by such lien has become enforceable, or the vendee has substantially defaulted in the performance of such retained title contract.
[3] Removing such property beyond the limits of county.  Whoever shall knowingly and without the written consent of the person having such a lien thereon, as mentioned in s. 818.01, buy, take, receive or remove or cause to be removed beyond the limits of the county, any personal property subject to such lien from the owner or any person in possession thereof, and whoever shall willfully conceal such property or obstruct, delay or hinder such lienholder in prosecuting his rights against any of such property, shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
[4] We also note that subsequent to adoption of the UCC, the First District applied section 818.01 in a criminal setting in Helmig v. State, 330 So.2d 246 (Fla.1st DCA 1976).
[5] Rosenberg v. Ryder Leasing, Inc., 168 So.2d 678 (Fla.3d DCA 1964), holding that a civil suit could be maintained based on a violation of section 818.01 and 818.03, was limited to a determination of whether the complaint therein stated a cause of action, and did not decide what evidence would be sufficient to sustain the action, or the proper amount of damages in a successful suit.
[6] Appellants have made no attempt either in this court or below to show the actual value of the fork lift or that any other measure of damages would be more just. Nothing in this opinion, however, shall preclude use of fair market value as the measure of damages in future cases under these statutes where it is shown to be an appropriate recovery.